514 S.E.2d 775

**Christopher John REITTINGER**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0246–97–3.**

Court of Appeals of Virginia,
Richmond.

May 25, 1999.

---

Malcolm G. Crawford, Lexington, for appellant.

Marla Graff Decker, Assistant Attorney General (Mark L. Earley, Attorney General, on briefs), for appellee.

Present: FITZPATRICK, C.J., BENTON, COLEMAN, WILLIS, ELDER, BRAY, ANNUNZIATA, BUMGARDNER and LEMONS, JJ., and OVERTON,* Senior Judge.

---

* Judge Overton participated in the hearing and decision of this case prior to the effective date of his retirement on January 31, 1999 and thereaf-

## UPON A REHEARING EN BANC

BUMGARDNER, Judge.

A panel of this Court reversed the conviction of Christopher John Reittinger for possession of marijuana. *See Reittinger v. Commonwealth*, 28 Va.App. 80, 502 S.E.2d 151 (1998). Upon a rehearing *en banc*, we ·conclude that the deputy sheriff developed a reasonable, articulable suspicion that the defendant was armed and dangerous during a consensual encounter which immediately followed a lawful detention of the defendant. The frisk for weapons that the deputy conducted was reasonable under the circumstances of this case and did not violate the Fourth Amendment. Accordingly, we affirm the conviction.

A deputy sheriff stopped the defendant for driving his 1990 Volkswagen van with a broken headlight at 10:30 p.m. in rural Rockbridge County. The deputy determined that the defendant had already bought a replacement bulb, though he had not yet installed it. The deputy warned the defendant not to drive at night until he fixed the light but told him that he was "free to go." Immediately thereafter, although the deputy did not have any particular reason to suspect criminal activity, he asked if the defendant had any contraband or firearms in the vehicle. Eventually, the defendant responded that he did not have any. The deputy then asked if he could search the vehicle for weapons or drugs. The deputy stated that he routinely asks for consent to search after most traffic stops and that he receives permission to do so in a majority of cases. The defendant turned around in his seat, looked at his two passengers, and whispered something the deputy could not hear. The deputy repeated his question several times, but the defendant did not answer. A second deputy was standing beside the passenger's door. Finally, without being asked to get out, the defendant opened the van door and started getting out.

---

ter by his designation as a senior judge pursuant to Code § 17.1–401, recodifying Code § 17–116.01:1.

As the defendant climbed out of the van, the deputy observed a bulge in his right front pocket. The deputy asked if the defendant had anything illegal on his person. The defendant replied that he did not but "moved his hand to cover up the bulge." The deputy patted the defendant's outer clothing, and felt a large, hard bulge in the pocket, which he thought might be a weapon. Again he asked the defendant what was causing the bulge, but the defendant did not answer. The deputy told him to empty the pocket, but the defendant emptied his left pocket, not the right one with the bulge. Increasingly suspicious that the defendant was hiding something, the deputy said, "you need to bring that out of your pocket," and the defendant pulled out a smoking device. It contained marijuana residue and was the basis for the charge placed against the defendant.

The defendant filed a motion to suppress the evidence arguing that the deputy illegally searched him. The trial court ruled the deputy was justified in frisking the defendant for his own safety, denied the motion to suppress, and convicted the defendant of possession of marijuana.

On appeal, the defendant bears the burden to establish that denying the motion to suppress was reversible error. *See Greene v. Commonwealth*, 17 Va.App. 606, 608, 440 S.E.2d 138, 139–40 (1994). Whether a seizure occurred and whether a frisk for weapons was constitutionally valid involve questions of law and fact which we review *de novo* on appeal. *See McGee v. Commonwealth*, 25 Va.App. 193, 197–98, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them...." *Id.* (citing *Ornelas*, 517 U.S. at 699, 116 S.Ct 1657). We view the evidence in the light most favorable to the Commonwealth. *See Fore v. Commonwealth*, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

The initial stop of the defendant was a valid stop for driving with a broken headlight at night, which the defendant con-

cedes. Following the deputy's investigation for that offense, the defendant was free to leave, but before he left, the deputy asked for permission to search the defendant's van. The defendant contends that the deputy's request and subsequent actions constituted a seizure. We disagree and hold that the lawful detention flowed immediately into a consensual encounter.

A consensual encounter can follow a legitimate detention. *See Ohio v. Robinette,* 519 U.S. 33, 39–40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (holding that consensual encounter may begin after legitimate detention has ended even if detainee is not told he is free to go). Consensual encounters " 'need not be predicated on any suspicion of the person's involvement in wrongdoing,' and remain consensual 'as long as the citizen voluntarily cooperates with the police.' " *Payne v. Commonwealth,* 14 Va.App. 86, 88, 414 S.E.2d 869, 870 (1992) (quoting *United States v. Wilson,* 953 F.2d 116, 121 (4th Cir.1991)). *See McGee,* 25 Va.App. at 198, 487 S.E.2d at 261; *Iglesias v. Commonwealth,* 7 Va.App. 93, 99, 372 S.E.2d 170, 173 (1988). Without some indicated restraint, mere questioning by officers when a routine traffic stop is over and its purpose served does not amount to a seizure under the Fourth Amendment. *See United States v. Sullivan,* 138 F.3d 126, 131 (4th Cir.1998).

A person is "seized" under the Fourth Amendment when "a reasonable person would have believed that he was not free to leave." *Mendenhall v. United States,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). In order for a seizure to occur, a police officer "must restrain a citizen's freedom of movement by the use of physical force or show of authority." *Ford v. City of Newport News,* 23 Va.App. 137, 142, 474 S.E.2d 848, 850 (1996) (citing *California v. Hodari D.,* 499 U.S. 621, 625, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). *See Thomas v. Commonwealth,* 24 Va.App. 49, 54, 480 S.E.2d 135, 137 (1997) (*en banc*). Questions alone do not amount to a seizure. *See Mendenhall,* 446 U.S. at 553–54, 100 S.Ct. 1870. "So long as the [individual] to whom the questions are put

remains free to disregard the questions and walk away," no Fourth Amendment violation has occurred. *Id. See Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Buck v. Commonwealth,* 20 Va.App. 298, 301–02, 456 S.E.2d 534, 535 (1995).

■ Under the circumstances of this case, a reasonable person would have believed that the investigation had ended and that he was free to leave. *See Wechsler v. Commonwealth,* 20 Va.App. 162, 171, 455 S.E.2d 744, 748 (1995). The deputy engaged the defendant in a consensual encounter following a lawful detention for defective equipment. Immediately after telling the defendant he was "free to go," the deputy asked the defendant whether he had any contraband or weapons and whether he would permit the deputy to search the vehicle. The defendant eventually exited the vehicle without being asked to do so. Under these facts, the continued encounter did not constitute a seizure. The deputy did not seize the defendant when he began asking to search. Compliance with a police request does not negate the consensual nature of the response. *See Baldwin v. Commonwealth,* 243 Va. 191, 197, 413 S.E.2d 645, 648 (1992); *Greene,* 17 Va.App. at 610, 440 S.E.2d at 140–41. Considering the totality of the circumstances, we hold that a reasonable person would have believed he was free to leave and could have declined to stay and answer the deputy's questions.

■ The trial court ruled that the deputy could frisk for weapons because he had a reasonable, articulable suspicion that the defendant was armed and dangerous. However, the defendant argues that the frisk was not permissible unless the deputy had reasonable suspicion that the defendant was engaged in criminal activity as well as a reasonable suspicion that he was armed and dangerous. We disagree.

■ A protective frisk for weapons is an intrusion upon an individual's personal privacy that implicates the Fourth Amendment. *See Adams v. Williams,* 407 U.S. 143, 147 n. 2, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Toliver v. Commonwealth,* 23 Va.App. 34, 36, 473 S.E.2d 722, 724 (1996). The

reasonableness of an intrusion is determined by "balancing an individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers." *Bethea v. Commonwealth,* 14 Va.App. 474, 476, 419 S.E.2d 249, 250 (1992) (*en banc*) (citation omitted), *aff'd on other grounds,* 245 Va. 416, 429 S.E.2d 211 (1993). Officer safety is among those interests against which personal rights must be balanced. *See Knowles v. Iowa,* 525 U.S. 113, —— –——, 119 S.Ct. 484, 487–88, 142 L.Ed.2d 492 (1998) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *Maryland v. Wilson,* 519 U.S. 408, 412–13, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *Pennsylvania v. Mimms,* 434 U.S. 106, 108–09, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (*per curiam*); *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

Virginia's appellate courts have confirmed on several prior occasions that an officer need not have a reasonable suspicion that a person is engaged in criminal activity before protecting himself with a carefully limited frisk for weapons. Courts have approved frisks under circumstances in which an officer developed a reasonable suspicion that the person he lawfully confronted was armed and dangerous even though the officer did not have a particularized suspicion that the subject was involved in criminal activity. In *Bethea v. Commonwealth,* 245 Va. 416, 420, 429 S.E.2d 211, 213 (1993), which involved the lawful stop of a vehicle for a decal violation, the Supreme Court upheld the conviction of a passenger who was first removed from the car and later frisked though he was not suspected of criminal activity. In *Moore v. Commonwealth,* 25 Va.App. 277, 286, 487 S.E.2d 864, 868–69 (1997), which involved the lawful stop of a vehicle for speeding, this Court upheld an officer's protective frisk of a passenger, stranded as a result of the stop, before the officer transported the passenger in his police cruiser. In *Welshman v. Commonwealth,* 28 Va.App. 20, 32, 502 S.E.2d 122, 128 (1998) (*en banc*), we held that police officers with probable cause to arrest a suspected drug dealer did not violate the Fourth Amendment when they

ordered bystanders to lie on the ground and frisked one bystander whose furtive actions caused an officer to believe he was armed and dangerous. Finally, in *James v. Commonwealth,* 22 Va.App. 740, 745–46, 473 S.E.2d 90, 92 (1996), in which officers were engaged in arresting the driver of a vehicle on a felony warrant, we held that the officers were justified in frisking a passenger who was jittery and failed to respond to an officer's request to keep his hands in view.

In each of these cases, the officer involved had a duty to initiate the encounter which put him lawfully in the presence of the individual frisked. Under settled principles, in order to conduct a pat-down weapons frisk, an officer must (1) rightly be in the presence of the party frisked so as to be endangered if the person is armed and (2) have reasonable suspicion that the person is armed and dangerous. *See* 4 Wayne R. LaFave, *Search and Seizure* § 9.5(a), at 246 (3d ed. 1996). The requirement that an officer be rightly in the presence of the person frisked means that the officer must have a duty to be in the person's presence, such as to execute a search warrant or to conduct an investigatory stop or arrest of some other person. *See id.* at 247 (citing *Terry,* 392 U.S. at 32–33, 88 S.Ct. 1868 (Harlan, J., concurring)). Such a duty existed in *Bethea, Moore, Welshman* and *James.* Conversely,

> a frisk for self-protection cannot be undertaken when the officer has unnecessarily put himself in a position of danger by not avoiding the individual in question. This means that in the absence of some legitimate basis for the officer being in the immediate proximity of the person, a degree of suspicion that the person is armed which would suffice to justify a frisk *if* there were that basis will not alone justify such a search.

LaFave, *supra,* at 247 (footnote omitted).

Extrapolating from these principles, we hold that where a lawful encounter based on reasonable suspicion or probable cause flows immediately into a consensual encounter, an officer remains lawfully in the presence of the individual previously detained for purposes of conducting a pat-down

search. Therefore, the officer may frisk the individual for weapons if he develops a reasonable suspicion that the individual may be armed and dangerous.

Here, the evidence may not have provided an objectively reasonable suspicion that the defendant was engaged in criminal activity during the consensual portion of the encounter. However, because it did establish that the deputy was rightly in the defendant's presence and that he had an objectively reasonable suspicion that the defendant was armed and dangerous, we hold that the frisk for weapons was lawful. The consensual encounter in this case followed immediately on the heels of a lawful detention. It did not involve an initial encounter that the deputy was at liberty to avoid. Both circumstances warranted and duty demanded a forced encounter.[1]

■■■ Upon completing the traffic stop, the deputy told the defendant he was "free to go" before beginning the consensual portion of the encounter during which he asked for permission to search the defendant's van. Although the portion of the encounter that continued after the initial lawful stop had terminated was consensual, the deputy remained vulnerable as long as the encounter continued. In the precarious moments as the defendant suddenly and unexpectedly emerged from the van, the deputy acquired a reasonable suspicion that he might be armed. The deputy observed a bulge in the defendant's right front pocket and asked him what it was. On receiving no answer but seeing the defendant move his hand toward the bulge and attempt to cover it up, the deputy for the first time touched the defendant. He felt a large, hard bulge and believed it could be a weapon. The defendant continued to evade the deputy's questions about what was in his pocket, so the deputy ordered him to remove the object.

---

1. Because the deputy had a duty to insist upon the initial confrontation, the consensual encounter immediately following it was not the type that concerned Justice Harlan in his concurring opinion in *Terry*, 392 U.S. at 32–33, 88 S.Ct. 1868. This deputy did not have the right to avoid the defendant. He did not simply walk up to and begin questioning a citizen without any suspicion of criminal activity.

It was a smoking device with marijuana residue and gave the deputy probable cause to arrest the defendant.

These facts show that the deputy did not pat the defendant down for weapons immediately upon seeing the bulge in the defendant's pocket. *See Stanley v. Commonwealth,* 16 Va. App. 873, 876–77, 433 S.E.2d 512, 514–15 (1993) (holding that officer's observation of bulge in clothing of driver of motor scooter during traffic stop was insufficient to support pat-down for weapons unless bulge was of size or shape to warrant reasonable suspicion that it could be a weapon or other facts supported reasonable suspicion that driver was armed and dangerous). Rather, the deputy made graduated responses to escalating concerns that the defendant was armed and dangerous. The deputy made reasonable, carefully measured inquiry regarding the bulge in the defendant's pocket, but at each level of inquiry, his suspicions were not dispelled; they were heightened. When the deputy finally touched the defendant by patting the bulge, he did seize the defendant, but by then he had developed reasonable suspicion to believe that the defendant was armed.

 This case involved an encounter at close range. The deputy was vulnerable before he told the defendant he was "free to go," he remained vulnerable after making that statement, and he became particularly vulnerable when the defendant began to exit the van. Under all the circumstances of this case, the deputy's actions were reasonable and constituted a permissible interference with the defendant's personal security as permitted under *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and its progeny. "Based on the inordinate risk of danger to law enforcement officers during traffic stops, observing a bulge that could be made by a weapon in a suspect's clothing reasonably warrants a belief that the suspect is potentially dangerous, even if the suspect was stopped only for a minor violation." *United States v. Baker,* 78 F.3d 135, 137 (1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 699, 139 L.Ed.2d 643 (1998). "The law does not expect a police officer must gamble on turning away from a possible danger and

chance taking a bullet in the back...." *Lansdown v. Commonwealth,* 226 Va. 204, 212, 308 S.E.2d 106, 111 (1983), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1604, 80 L.Ed.2d 134 (1984).

We hold that the frisk for weapons was reasonable under the facts of this case and that the trial court, therefore, properly denied the motion to suppress. Accordingly, we affirm the defendant's conviction.

*Affirmed.*

COLEMAN, Judge, with whom FITZPATRICK, C.J., BENTON and ANNUNZIATA, JJ., join, dissenting.

The Fourth Amendment of the Constitution of the United States provides in part that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." This inestimable right of personal security belongs to all citizens, whether they are in the comfort of their homes or in the streets of our cities.

*Harris v. Commonwealth,* 241 Va. 146, 149, 400 S.E.2d 191, 193 (1991) (quoting *Terry v. Ohio,* 392 U.S. 1, 8–9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

The majority holds that a police officer who is engaged in a consensual encounter with a citizen, following a lawful but concluded traffic stop, may, without violating the Fourth Amendment, frisk a citizen for weapons when the officer has reason to believe the citizen is armed but no reason to suspect that the citizen is or may be engaged in criminal activity. The majority bases its holding upon the required Fourth Amendment analysis of "balancing an individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers." In so doing, the majority concludes that a police officer's safety, *standing alone,* outweighs the intrusion upon a citizen's privacy right and justifies a pat-down of the citizen for weapons. The majority's balancing analysis ignores a major component of the second prong of the equation which is balancing the

individual's privacy right against both the police officers' safety and "society's countervailing interest in preventing or detecting crime." In order to justify an intrusion upon an individual's privacy right, there must be a reason to suspect that the person to be frisked is armed and dangerous and a reason requiring the officer to remain on the scene—such as the officer's duty to pursue suspected criminal activity or some other official duty of his or her office.

The mere fact that a police officer observes a bulge in a citizen's pocket during a consensual encounter and reasonably suspects that it is a weapon of some type does not justify a frisk of the citizen.[2] I find no authority for the proposition that a police officer engaged in a consensual encounter with a citizen may frisk the citizen for weapons without either some suspicion that the citizen may be involved in criminal activity or some duty to remain on the scene to fulfill other law enforcement responsibilities. Thus, Deputy Bolen's frisk of Reittinger, based solely upon the fact that the deputy suspected he might have a weapon, was not a reasonable search as required by the Fourth Amendment. I would hold that because the frisk violated the Fourth Amendment, the trial court erred in not suppressing the seized smoking device that contained marijuana residue. I would reverse the conviction.

The majority holds that the frisk for weapons occurred during a consensual encounter in which the deputy was attempting to persuade Reittinger to consent to a search of his vehicle for weapons or contraband. The deputy conceded that when he requested to search the van, he had no reason to suspect that the van contained or that Reittinger possessed weapons or contraband. In order to justify the frisk of Reittinger during the consensual encounter, the majority at-

---

2. *See Stanley v. Commonwealth,* 16 Va.App. 873, 876–77, 433 S.E.2d 512, 514–15 (1993) (holding that it was unreasonable for the officers to suspect that the bulge in the pocket of a motor scooter operator was a weapon). In the present case, the officer stated he frisked Reittinger for "his safety" and because he thought the bulge might be a weapon; however, the officer testified at trial that he did not believe Reittinger was armed and dangerous.

tempts to link the frisk to the original traffic stop by characterizing the consensual encounter as a seamless event that "flows immediately" from the lawful traffic stop. I respectfully disagree with the majority's characterization of circumstances and the consequences of that characterization. If the encounter, during which the deputy made three separate requests to search Reittinger's van, was part of the traffic stop because the events "flow[ed] immediately into a consensual encounter," then, as Judge Benton asserts in his dissent, Reittinger could not have felt free to leave during this continuation of the traffic stop; thus, the continued detention and frisk of Reittinger were both illegal. For the majority to reach this result by simply suggesting the frisk was part of the traffic stop which "flows immediately into a consensual encounter" obliterates the distinction between a consensual encounter and a lawful detention based on reasonable suspicion or probable cause of criminal activity. A motorist has the right to be free of law enforcement intrusion when he or she is no longer reasonably suspected of being involved in criminal activity. However, although I reject the majority's utilization of the "flows immediately into a consensual encounter" rationale, I accept the majority's ultimate conclusion that the frisk occurred during a consensual encounter.[3]

---

3. Until the frisk, the encounter was not a "seizure" that implicated the Fourth Amendment. Even though a citizen may feel some trepidation during a consensual encounter with a police officer and may be reluctant to walk away, a police officer's conduct does not implicate the Fourth Amendment if the officer merely poses questions to an individual in a public place and the individual chooses to answer them. *See Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Buck v. Commonwealth*, 20 Va.App. 298, 301–02, 456 S.E.2d 534, 535 (1995). Without some indicated restraint, mere questioning by officers after a routine traffic stop is over and its purpose served, does not amount to a seizure under the Fourth Amendment. *See United States v. Sullivan*, 138 F.3d 126, 131 (4th Cir.1998). "As long as the [individual] to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the [Fourth Amendment] require some particularized and objective justification." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

The *Terry* decision emphasized that courts must give judicial "approval of legitimate and restrained investigative conduct undertaken on the basis of ample factual justification," but cautions that courts must be mindful of the "traditional responsibility to guard against police conduct ... which trenches upon personal security without the objective evidentiary justification which the Constitution requires." *Terry,* 392 U.S. at 15, 88 S.Ct. 1868. I am not unmindful of the fact that police officers confront armed and dangerous people almost daily. They are constantly subject to personal harm and loss of life. Not surprisingly, a traffic stop is one of the most dangerous duties performed by a police officer. *See Pennsylvania v. Mimms,* 434 U.S. 106, 118–19, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Although the right of a police officer to protect himself or herself from an armed citizen must be accorded high priority, a police officer is not entitled to frisk a citizen during a consensual encounter merely because the person is suspected of being armed and dangerous. *See* 4 Wayne R. LaFave, *Search and Seizure* § 9.5(a), at 245–70 (3d ed. 1996).

The cases relied upon by the majority do not provide such authority. In *Bethea v. Commonwealth,* 245 Va. 416, 420, 429 S.E.2d 211, 213 (1993), the defendant, who was a passenger in a car stopped for a traffic infraction, was lawfully frisked because he was being lawfully detained and his "bizarre" behavior reasonably caused the officer to be "startled" and "scared" that the defendant "might have had access to weapons." In *Moore v. Commonwealth,* 25 Va.App. 277, 286, 487 S.E.2d 864, 868–69 (1997), a police officer was required to remain in a citizen's presence while transporting the stranded pedestrian in his cruiser off the interstate highway. Performance of the officer's duties required that he remain in the citizen's presence in a vulnerable situation. Similarly, in *Welshman v. Commonwealth,* 28 Va.App. 20, 32, 502 S.E.2d 122, 128 (1998) (*en banc*), the defendant, who was among a group of bystanders, was lawfully detained during an arrest of two persons observed making a drug sale; the lawful detention of those who might aid and assist the persons being

arrested justified a protective frisk of the bystander for weapons. And, in *James v. Commonwealth,* 22 Va.App. 740, 744–46, 473 S.E.2d 90, 92 (1996), a passenger who was frisked for weapons was lawfully detained while the officers arrested the driver on a felony warrant.

In each case, officers either lawfully detained the defendant as part of a criminal investigation or traffic stop or, in carrying out a police function, the officer was required to remain in the citizen's presence in a vulnerable situation. In none of these cases was the defendant frisked during a wholly consensual encounter without the added element of the officer needing to remain in the defendant's presence in order to fulfill his or her duty. The fact that Deputy Bolen may ask for consent to search and may lawfully remain on the scene until the citizen responds to his request is of no moment. The question is not whether the officer had the right to be there; it is whether the officer had the duty or responsibility to be there and the commensurate right to protect his or her safety. An officer may have the right to engage any citizen in public in a consensual encounter, but the officer may not, in these circumstances, frisk the citizen merely because the officer reasonably fears for his or her safety.

An officer's protective frisk for weapons is an intrusion upon an individual's personal privacy and is itself a "seizure" that implicates the Fourth Amendment. *See Terry,* 392 U.S. at 16–19, 88 S.Ct. 1868; *Toliver v. Commonwealth,* 23 Va.App. 34, 36, 473 S.E.2d 722, 724 (1996). The determination as to the reasonableness of a stop or seizure depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

In *Terry,* the Supreme Court held that a police officer may conduct a protective frisk if he or she can point to " 'specific and articulable facts which, taken together with rational inferences from those facts,' " reasonably lead the officer to conclude: (1) that " 'criminal activity may be afoot,' " *and* (2) that

the suspect " 'may be armed and presently dangerous.' " *Lansdown v. Commonwealth*, 226 Va. 204, 209, 212, 308 S.E.2d 106, 110, 112 (1983) (quoting *Terry*, 392 U.S. at 21, 30, 88 S.Ct. 1868). Justice Harlan emphasized in his concurring opinion in *Terry* that the Fourth Amendment generally does not permit a police officer to frisk an individual based solely upon the officer's reasonable suspicion that the individual is armed and dangerous but without a legitimate reason to suspect criminal activity. He stated:

> [I]f the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a *forcible* stop. Any person, including a [police officer], is at liberty to avoid a person he considers dangerous. If and when a [police officer] has a right instead to disarm such a person for his own protection, *he must first have a right not to avoid him but to be in his presence. That right must be more than the liberty (again, possessed by every citizen) to address questions to other persons, for ordinarily the person addressed has an equal right to ignore his interrogator and walk away; he certainly need not submit to a frisk for the questioner's protection. I would make it perfectly clear that the right to frisk ... depends upon the reasonableness of a forcible stop to investigate suspected crime.*

*Terry*, 392 U.S. at 32–33, 88 S.Ct. 1868 (Harlan, J., concurring) (second emphasis added). *Accord Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) ("So long as the officer is *entitled* to make a *forcible* stop, *and* has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." (emphasis added) (footnote omitted)).

As Justice Harlan's concurring opinion asserts, the general purpose of a protective frisk is to facilitate the police officer's limited investigation of suspected criminal activity without fear or threat of violent reprisal by the suspect. *See Adams*, 407 U.S. at 146, 92 S.Ct. 1921. An officer acts unreasonably by conducting a protective frisk when the officer has unnecessari-

ly placed himself or herself in a precarious situation by initiating or continuing a baseless encounter with an individual whom he or she considers armed and dangerous. *See* 4 LaFave, *supra* § 9.5(a), at 246–47. Thus, consistent with the commands of the Fourth Amendment, a police officer may not approach and frisk an individual whom he or she reasonably believes may be armed and dangerous if the officer has no reason to suspect that the individual is or may be also engaged in criminal activity.[4] *See Toliver,* 23 Va.App. at 36–37, 473 S.E.2d at 724; *Commonwealth v. Couture,* 407 Mass. 178, 552 N.E.2d 538, 540–41 (1990); *State v. Giltner,* 56 Haw. 374, 537 P.2d 14, 17 (1975); *People v. Batino,* 48 A.D.2d 619, 367 N.Y.S.2d 784, 785 (1975).

Similarly, where an officer lawfully "stops" an individual, and through investigation dispels any reasonable suspicion that the individual may be engaged in criminal activity, the officer may not thereafter conduct a protective frisk for weapons, even if the officer reasonably suspects that the individual is presently armed and dangerous, unless subsequent circumstances renew the officer's reasonable belief that criminal activity may be afoot. *See United States v. Thomas,* 863 F.2d 622, 628 (9th Cir.1988); *State v. White,* 856 P.2d 656, 662 (Utah Ct.App.1993); *Coleman v. United States,* 337 A.2d 767, 771–72 (D.C.App.1975); *see also* 4 LaFave, *supra,* § 9.5(a), at 247. An officer may not justify a protective search by using legitimate safety concerns to bootstrap the lack of suspicion of criminal activity. *See id.* Under the general rule of *Terry,* if the officer's justification to stop or detain a person dissipates, then a weapons frisk is constitutionally impermissible.[5] In

---

**4.** As one court has colorfully stated the rule: "No matter how appealing the cart may be, the horse must precede it." *Gomez v. United States,* 597 A.2d 884, 891 (D.C.App.1991).

**5.** The decision in *Thomas* is demonstrative. There, a police officer, after receiving a report describing two men suspected of passing counterfeit money, stopped a vehicle in which two possible suspects were riding. *Thomas,* 863 F.2d at 624. After stopping the vehicle, the officer determined that the defendant "did not match the description of either of the suspects." *Id.* at 628. After questioning the defendant as

order to conduct a protective frisk under current case law, a police officer must legitimately be in the presence of the subject of the frisk in the course of performing the officer's duties to investigate suspected criminal activity or to protect the public safety. *See* 4 LaFave, *supra*, § 9.5(a), at 247.

Once Deputy Bolen had completed the investigation of Reittinger's defective equipment violation, he was no longer required, by virtue of his duties, to continue an investigation or to secure the safety of citizens. Bolen testified that after he completed the headlight investigation, he did not suspect that Reittinger was otherwise engaged in criminal activity. Bolen lawfully requested permission to search Reittinger's vehicle, a question he "commonly ask[s] people [after] a traffic stop." Assuming Bolen had a reason to suspect that Reittinger may have been armed, Bolen's frisk violated the Fourth Amendment because, at the time of the frisk, his duties did not require him to remain in Reittinger's presence to investigate crime or to protect public safety. Because the frisk violated the Fourth Amendment, the evidence should have been suppressed. Accordingly, I respectfully dissent.

BENTON, Judge, dissenting.

I substantially concur in the dissenting opinion by Coleman, J., except footnote 3, and I concur in his conclusion that the trial judge erred in failing to suppress the evidence. I disagree, however, with the views expressed in both the majority opinion and footnote 3 of the dissenting opinion that Christo-

---

to why he was in the area and checking his identification, the officer asked Thomas whether he was carrying a weapon. When Thomas did not respond, the officer frisked Thomas, recovered a handgun, and arrested him for carrying a concealed weapon. *Id.* at 624. The federal appeals court determined in *Thomas* that the officer's initial stop was lawful, finding that the defendant's initial appearance and proximity to the crime scene reasonably supported the officer's suspicion that he might be the counterfeiter. *Id.* at 626. However, the court found that the justification for the stop evaporated when the officer determined that Thomas did not fit the reported description of either suspect. *Id.* at 628–29. Because the officer lacked reasonable suspicion that Thomas was engaged in criminal activity, the court held that there was "no basis for the [officer's] subsequent detention and frisk." *Id.* at 628.

pher John Reittinger was not unlawfully seized when the officer began his inquiry about drugs and guns.

"[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). The evidence proved that "probably no more than a second or two" after the deputy told Reittinger he was "free to go," the deputy asked Reittinger "if he had any drugs or weapons in the vehicle." This inquiry concerning the drugs and weapons was an unconstitutional extension of the original traffic stop. Although the reason for the initial stop had ended, the deputy continued the detention by making inquiries unrelated to the initial stop.

I would uphold the trial judge's finding that "[a]t that point the reason for the stop was resolved, the investigation was complete and the deputy had no articulable reason or suspicion to further detain [Reittinger]." As the trial judge ruled, "[a] reasonable person . . . upon immediately being subjected to a new and unrelated inquiry would conclude his detention continued . . . and the reasonable inference to be drawn from [Reittinger] voluntarily exiting his vehicle is that [Reittinger] concluded he was not free to leave." Indeed, the deputy's inquiry concerning drugs and guns was so immediate that a reasonable person would not have believed he or she was free to leave. *See Florida v. Royer*, 460 U.S. 491, 502, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *see also Payne v. Commonwealth*, 14 Va.App. 86, 89, 414 S.E.2d 869, 870 (1992) (noting "[t]he 'principle embodied by the phrase "free to leave" means the ability to ignore the police and to walk away from them,' to ' "feel free to decline the officers' requests or otherwise terminate the encounter." ' " (citation omitted)). Supporting the trial judge's finding is the absence of evidence that the deputy had returned Reittinger's vehicle registration when he began the inquiry about the drugs and weapons. That factor distinguishes this case from *United States v. Sullivan*, 138 F.3d 126 (4th Cir.1998), cited in both the majority opinion and footnote 3 of the dissenting opinion.

The deputy's immediate transition into the inquiry was so seamless that a reasonable person would not have believed the initial seizure had ended. *See Royer,* 460 U.S. at 502–03, 103 S.Ct. 1319. An officer cannot free him or herself of a detainee's constitutional protections by simply stating that the detainee is "free to go" if the officer's subsequent words or conduct convey a contrary message. Therefore, I would hold that the inquiry concerning the drugs and weapons unlawfully extended the seizure, because the deputy had completed the equipment investigation. The deputy's actions subjected Reittinger to a new and unrelated inquiry under circumstances such that a reasonable person would not have believed the initial seizure had ended or that he or she was free to leave. *See Toliver v. Commonwealth,* 23 Va.App. 34, 37, 473 S.E.2d 722, 724 (1996) (Benton, J., concurring).

For these reasons, and for the reasons expressed by Coleman, J., in the text of his dissenting opinion, I would reverse the trial judge's refusal to suppress the evidence.